Oral Argument Not Yet Scheduled
No. 26-5172

In the
**United States Court of Appeals**
**for the District of Columbia Circuit**

MASSIMILIANO CALI and L.C., a minor,
Plaintiffs-Appellees,
v.
DONALD J. TRUMP, President of the United States, et al.,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia
No. 1:26-cv-00688-RJL (Hon. Richard J. Leon)

**BRIEF OF AMICUS CURIAE**
**HUMAN RIGHTS VOICES**
**IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL**
(Filed With the Consent of All Parties; Circuit Rule 29(b))

David I. Schoen
Schoen Law Firm, LLC
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Tel. 917-941-7952
Email: SchoenLawfirm@gmail.com

*Counsel for Amicus Curiae*
*Human Rights Voices*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for amicus curiae certifies the following:

(A) Parties and Amici. Except for amicus curiae Human Rights Voices, which appears for the first time in this Court, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Defendants-Appellants to the best of our knowledge. Human Rights Voices makes the disclosure required by Circuit Rule 26.1 in the Corporate Disclosure Statement that follows.

(B) Rulings Under Review. The ruling under review is the Memorandum Opinion and Order of the United States District Court for the District of Columbia (Leon, J.), entered May 13, 2026, granting a preliminary injunction. *L.C. ex rel. Cali v. Trump*, No. 26-688 (RJL), 2026 WL 1329750 (D.D.C. May 13, 2026). JA153-181 (Dkt. Nos. 48, 49).

(C) Related Cases. This case has not previously been before this Court. Counsel is aware of one related case within the meaning of Circuit Rule 28(a)(1)(C), which limits related cases to those pending in this Court or in another court in the District of Columbia: *Doe v. Trump*, No. 26-2221 (JEB) (D.D.C.), a pro se challenge to Executive Order 14203 in which the district court denied leave to proceed under a pseudonym on July 28, 2026, directed the Clerk to terminate the case absent a notice from the plaintiff within fourteen days, and did not reach the merits. Counsel is aware of no other related case.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amicus curiae states the following. Human Rights Voices is a nonprofit organization. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

## CERTIFICATE OF COUNSEL PURSUANT TO CIRCUIT RULE 29(d)

Pursuant to D.C. Circuit Rule 29(d), counsel for amicus curiae Human Rights Voices certifies that a separate brief is necessary. Human Rights Voices is an educational organization whose work concerns the United Nations human rights system and its interaction with domestic legal and political institutions. This brief

develops material that no party and no other prospective amicus is positioned to present: the documentary record of Albanese's participation in proceedings of the International Criminal Court, drawn from that Court's own filings, together with the institutional setting in which a United Nations mandate was turned toward the prosecution of American and allied nationals. The amicus brief filed by the American Center for Law and Justice at the stay stage addressed the constitutional questions rather than this record, and counsel is aware of no other amicus that intends to present this material. Amicus does not seek to exceed the length these rules allow, and does not rest this certificate on the geographic dispersion of counsel or on separate presentations in earlier proceedings.

# TABLE OF CONTENTS


Certificate as to Parties, Rulings, and Related Cases ....... i

Certificate of Counsel Pursuant to Circuit Rule 29(d) ....... i

Corporate Disclosure Statement ....... i

Table of Authorities ....... iv

Glossary ....... vi

Statement of Identity, Interest, and Authority to File ....... 1

Interest of Amicus Curiae Human Rights Voices ....... 1

Introduction and Summary of Argument ....... 2

Argument ....... 5

I. Albanese Did Not Just Speak About the ICC's Prosecutions. She Joined Them ....... 5

II. The First Amendment Does Not Immunize Coordinated Participation in a Foreign Tribunal's Coercive Process ....... 12

III. The Designation Tracks Albanese's Conduct, Not Her Views, and the Record Makes the Executive's Judgment a Reasonable One ....... 17

Conclusion ....... 21

Certificate of Compliance ....... 24

Certificate of Service ....... 25

# TABLE OF AUTHORITIES

*Authorities upon which we chiefly rely are marked with asterisks.*

Cases Page(s)

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)............................................................13

**Cali v. Trump*, No. 26-5172, 2026 WL 1765953 (D.C. Cir. June 15, 2026)....i, 4, 5

*Doe v. Trump*, No. 26-2221 (JEB), 2026 WL 2169013 (D.D.C. July 28, 2026) .......i

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913 (D.C. Cir. 2017) ......17

**Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ...........................9, 10, 13

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) ..13

*Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133 (9th Cir. 2009) ..........................................................................................................................13

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012) ..................................................13

*Karadzic v. Gacki*, 602 F. Supp. 3d 103 (D.D.C. 2022)..........................................4

*L.C. ex rel. Cali v. Trump*, No. 26-688 (RJL), 2026 WL 1329750 (D.D.C. May 13, 2026) ..........................................................................................................i

*Matal v. Tam*, 582 U.S. 218 (2017) .........................................................................17

**Open Soc'y Justice Initiative v. Trump*, 510 F. Supp. 3d 198 (S.D.N.Y. 2021)....11

**Rona v. Trump*, 797 F. Supp. 3d 278 (S.D.N.Y. 2025) .........................................11

*Smith v. Trump*, 791 F. Supp. 3d 90 (D. Me. 2025) ..........................................11, 12

*United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011)......................................12

*United States v. Griffith*, 515 F. Supp. 3d 106 (S.D.N.Y. 2021) .............................12

*United States v. Osadzinski*, 97 F.4th 484 (7th Cir. 2024) ......................................13

Statutes, Regulations, and Constitutional Provisions

U.S. Const. amend. I ........................................................ 4, 5, 9, 10, 13, 14, 17, 18

5 U.S.C. § 706 ..................................................................................................17

18 U.S.C. § 2339B ...............................................................................................9

28 U.S.C. § 636(b)(1)............................................................................................8

50 U.S.C. § 1702(b)(3).........................................................................................12

31 C.F.R. § 560.210(c)(2) ....................................................................................12

*Exec. Order No. 14203, 90 Fed. Reg. 9369 (Feb. 6, 2025) ...........................i, 7, 14

**Rules**

Fed. R. App. P. 26.1 ............................................................................................i

Fed. R. App. P. 29 .........................................................................................2, 20

Fed. R. App. P. 32 ...............................................................................................20

D.C. Cir. R. 26.1 ..................................................................................................i

D.C. Cir. R. 28 .....................................................................................................i

D.C. Cir. R. 29 ...................................................................................................i, 2

## GLOSSARY

| | |
|---|---|
| E.O. | Executive Order |
| ICC | International Criminal Court |
| IEEPA | International Emergency Economic Powers Act |
| ISIS | Islamic State of Iraq and Syria |
| JA | Joint Appendix |
| OFAC | Office of Foreign Assets Control |
| U.N. | United Nations |

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

**Interest of Amicus Curiae Human Rights Voices**

Human Rights Voices is an educational nonprofit organization dedicated to informing governmental and non-governmental bodies, as well as members of the general public, about the international human rights system centered at the United Nations, and its interface with domestic legal and political institutions. Our research focuses on challenges to the integrity of the United Nations and related international human rights mechanisms, and the identification of appropriate responses at the national level. Our organization works to expose failures and shortfalls in the United Nations human rights sphere in order to correct distortions, demand accountability, refocus attention on actual human rights victims, and assist lawmakers and policy decision-makers in determining the role, if any, of the United Nations on defining the needs and goals of modern-day democratic societies.

The work of Human Rights Voices is, therefore, built around three related commitments. First, Human Rights Voices draws public attention to real victims of human-rights violations, including those whose suffering is minimized, politicized, or erased by international institutions. Second, it makes transparent the United Nations' record in fulfilling, or failing to fulfill, its foundational promise, namely, to identify, condemn, and prevent human-rights violations, and to confront threats to

international peace and security. Third, it provides an information base for democratic societies seeking to reassess the priorities, assumptions, and direction of key human rights protection mechanisms in the modern era.

The controversy over Francesca Albanese's statements and conduct belongs to a wider pattern in which the language and machinery of human rights are manipulated to shield bias, invert victim and aggressor, and lend institutional authority to campaigns that target Jews and the Jewish state under the banner of international law. Human Rights Voices has a strong interest in ensuring that courts understand the institutional setting in which such conduct occurs and the damage it does to genuine human-rights protection.

**All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2); D.C. Cir. R. 29(b).**

No party's counsel authored this brief in whole or in part. No party, no party's counsel, and no person other than amicus curiae, their members, and their counsel contributed money intended to fund the preparation or submission of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Francesca Albanese participated in international litigation targeting an ally of the United States, including by filing a brief in the Pre-Trial Chamber of the International Criminal Court urging that a sitting head of government be arrested

and prosecuted. She did so in her capacity as a Special Rapporteur, formally appointed by the UN Human Rights Council, as described in more detail herein below. Indeed, at all times relevant to the matters at issue in this case and with respect to all actions she took, Albanese acted in her capacity as a UN-appointed Special Rapporteur. Nevertheless, the district court ignored the significance of her official position and mistakenly treated her as standing outside those proceedings and called that brief "nothing more than her opinion." It was not merely her opinion. It was a filing.

Albanese lodged an amicus submission on the Pre-Trial Chamber's docket in the "Situation in the State of Palestine," arguing that the Court could exercise jurisdiction over Israeli nationals, after the Prosecutor had moved for arrest warrants against Israel's Prime Minister and Defense Minister.[1] She signed first among thirty-two mandate-holders on a letter transmitting material to the Prosecutor, whose Information and Evidence Unit wrote back to confirm that the material had been received and would be passed to the relevant staff.[2] She named the men she wanted charged by the Court in United Nations reports. She did the same to Americans, urging the Court to prosecute corporate executives and naming more than sixty

[1]Amicus Curiae Submission by the United Nations Mandate Holders of the Human Rights Council, Situation in the State of Palestine, ICC-01/18-320 (Aug. 6, 2024), https://www.ohchr.org/sites/default/files/documents/issues/terrorism/sr/court-submissions/2024-08-06-icc-0118-320.pdf.

[2]Letter from Mark P. Dillon, Head, Info. & Evidence Unit, Office of the Prosecutor, to Francesca Albanese, OTP-CR-113/23 (Apr. 26, 2023), https://www.ohchr.org/sites/default/files/documents/issues/culturalrights/activities/CPI-answer-State-Palestine-26April2023.pdf.

companies. The Prosecution cited the rapporteurs' submission in its own filings to the Chamber.[3] Two members of the panel that stayed the injunction below wrote separately to say that "of all her provocative writings, the amicus brief most 'directly engaged' ICC efforts to arrest and prosecute Israeli government officials, including Netanyahu and Gallant."[4] That is direct, active participation acting as a UN-appointed rapporteur, and the Court's own docket records it.

As a result of her record of activities, on July 9, 2025, Secretary of State Marco Rubio designated Albanese for sanctions pursuant to President Trump's Executive Order 14203, Imposing Sanctions on the International Criminal Court. 90 Fed. Reg. 9369 (Feb. 6, 2025) ("the designation").

The district court did not engage in this directly relevant and vitally important element of the record. It held that because Albanese's recommendations do not bind the ICC, they are "nothing more than her opinion," and that sanctioning her "opinion" punishes speech protected by the First Amendment. The threshold rule the Government presses is correct and dispositive: a non-resident alien acting abroad has no First Amendment rights to assert, and this Court need go no further. *See Karadzic v. Gacki*, 602 F. Supp. 3d 103, 111 (D.D.C. 2022) (noting sanctioned

---

[3] Prosecution's Consolidated Response to Observations by Interveners Pursuant to Article 68(3) of the Rome Statute and Rule 103 of the Rules of Procedure and Evidence, Situation in the State of Palestine, ICC-01/18-346, ¶¶ 66-67, 70, 73, 80 & nn.148, 156, 168, 176, 196 (Aug. 23, 2024).
[4] *Cali v. Trump*, No. 26-5172, 2026 WL 1765953 (D.C. Cir. June 15, 2026) (per curiam) (Katsas, J., concurring, joined by Henderson, J.).

foreign national "concedes that as a Serbian national with no connections to the United States, he has no U.S. constitutional rights"). This brief assumes that rule and supplies the alternative ground the parties have left undeveloped. Even assuming the plaintiffs are right that Albanese enjoys at least some First Amendment protection, the designation pursuant to Executive Order 14203 still stands, because the First Amendment does not immunize coordinated participation in a foreign tribunal's coercive process, whatever form that participation takes.

Part I shows what Albanese did. Part II shows why the law does not protect it. Part III shows that the designation tracks her conduct, and that the record makes the Executive's judgment a reasonable one.

## ARGUMENT

### I. Albanese Did Not Just Speak About the ICC's Prosecutions. She Joined Them.

The district court's opinion rests on a single factual premise: that Albanese "has done nothing more than speak," and that her submissions are "nothing more than her opinion." Everything the court held about the First Amendment follows from that premise, but the premise is false. Here is what the record shows, and here is what the opinion left out.

**Albanese is a prominent figure at the United Nations, and not a mere advocate.** Albanese was appointed the "Special Rapporteur on the situation of

human rights in the Palestinian territories occupied since 1967" by the UN Human Rights Council on April 1, 2022[5] and has held that position since May 1, 2022. She receives funding from the UN regular budget, as well as voluntary contributions from UN member states, for research, travel, consultations and administrative support "intended to support the work of the mandate."[6] UN regular budget resources fund Albanese's travel to the UN in Geneva to present reports to the UN Human Rights Council; travel to UN Headquarters in New York to present reports to the UN General Assembly; official country visits; consultations; and the preparation of studies.[7] Divisions within the UN's Office of the High Commissioner for Human Rights provide Albanese, and other "Special Procedures", with support and administrative services.[8] A UN "Code of Conduct for Special Procedures Mandate-Holders of the Human Rights Council" applies to Albanese as a Special Rapporteur.[9]

**Albanese filed on the Pre-Trial Chamber's docket.** In July 2024, after the Prosecutor sought warrants for Israel's Prime Minister and Defense Minister, Albanese and twenty-nine other mandate-holders requested leave from the ICC Pre-

---

[5] Annex IV: Special procedure mandate holders and members of subsidiary expert mechanisms appointed by the Human Rights Council at its forty-ninth session, Report of the Human Rights Council on its forty-ninth session, A/HRC/49/2 (Nov. 30, 2023).
[6] "Funding sources," website of the UN Office of the High Commissioner for Human Rights, https://www.ohchr.org/en/special-procedures-human-rights-council/funding-sources.
[7] *Id.*
[8] Manual of Operations of the Special Procedures of the Human Rights Council (Aug. 2008), https://www.ohchr.org/en/documents/procedural-documents/manual-operations-special-procedures-human-rights-council.
[9] Code of Conduct for Special Procedures Mandate-holders of the Human Rights Council. A/HRC/RES/5/2 (2007).

Trial Chamber to submit amicus curiae observations regarding the warrants pursuant to Rule 103(1) of the ICC's Rules of Procedure and Evidence.[10] In the request, Albanese and the others argued that "[a]s Mandate Holders, they are part of '[t]he system of Special Procedures' that 'is a central element of the United Nations human rights machinery and covers all human rights: civil, cultural, economic, political, and social.'"[11] The Pre-Trial Chamber granted their request,[12] having determined that Albanese's proposed amicus submission was "desirable for the proper determination of the case."[13] In August 2024, Albanese and the other mandate-holders lodged an amicus submission in the "Situation in the State of Palestine," which was assigned its own filing number on the docket, arguing that the Court could exercise jurisdiction over Israeli nationals.[14] An ICC amicus brief is a document filed in the case, on the docket, for the tribunal to use to properly determine the case.[15] It is intended to provide "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." Hard Drive Prods. Inc. v. Does 1–1,495, 892 F. Supp. 2d 334, 337 (D.C. Cir. 2012) (internal quotation marks omitted).

---

[10] UN Human Rights Council Mandate Holders' Request to provide amicus curiae observations pursuant to Rule 103(1) of the Rules of Procedure and Evidence, ICC-01/18-215-Anx (Jul. 12, 2024), https://www.icc-cpi.int/sites/default/files/RelatedRecords/0902ebd1808e8d1d.pdf.

[11] *Id.* ¶ 3.

[12] Decision on requests for leave to file observations pursuant to rule 103 of the Rules of Procedure and Evidence, ICC-01/18-249 (Jul. 22, 2024), https://www.icc-cpi.int/sites/default/files/CourtRecords/0902ebd1809006d1.pdf.

[13] Rule 103(1), ICC Rules of Procedure and Evidence, https://www.icc-cpi.int/sites/default/files/RulesProcedureEvidenceEng.pdf.

[14] Amicus Curiae Submission by the United Nations Mandate Holders, *supra* note 1.

[15] *Supra* note 13.

Judge Katsas, joined by Judge Henderson, singled out that amicus submission: "[O]f all her provocative writings, the amicus brief most 'directly engaged' ICC efforts to arrest and prosecute Israeli government officials, including Netanyahu and Gallant."[16] The district court did not mention the filing. The plaintiffs did. Opposing the stay below, even they told the district court that Albanese was sanctioned "for writing reports, sending letters, and *signing an amicus brief*."[17]

**Albanese supplied material to the ICC Prosecutor, and the Prosecutor's office confirmed receipt in writing.** In March 2023 she signed first among thirty-two mandate holders on a letter to the Prosecutor transmitting documents regarding the "Situation in the State of Palestine," documents the signatories described as "solid evidence of allegations" of violations committed "intentionally and systematically."[18] The Office's Information and Evidence Unit wrote back. It thanked the sender for the communication, stated that the information would be added to its collection, and advised that it would be transmitted to the relevant staff for further review.[19] Albanese later announced that she would "send personally the genocide report" she had written for the Human Rights Council in March 2024[20] "to

[16]Cali, *supra* note 4.
[17] Emphasis added. Pls. Reply in Supp. of Mot. for Prelim. Inj., ECF No. 32, at 5, quoted in Cali, *supra* note 4 (Katsas, J., concurring), slip op. at 6–7.
[18]Joint Letter from Thirty-Two U.N. Special Procedures Mandate Holders to Karim A. A. Khan QC, Prosecutor of the Int'l Criminal Court, Re: Investigation into the Situation in the State of Palestine (Mar. 23, 2023), https://www.ohchr.org/sites/default/files/documents/countries/palestine/2023-03-23-Letter-ICC-Palestine.pdf. Albanese is the first signatory.
[19]Letter from Mark Dillon, *supra* note 2.
[20]Anatomy of a Genocide: Rep. of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967, U.N. Doc. A/HRC/55/73 (Mar. 25, 2024).

the Court, to the Prosecutor."[21] A person who puts documents into a prosecutor's evidence file, and receives written confirmation that the file now holds them, is helping to build the case.

**Albanese named the targets.** Her March 2026 report to the Human Rights Council[22] did not call for accountability in the abstract. It urged the Office of the Prosecutor to "immediately request arrest warrants" for named Israeli officials, "in particular Itamar Ben-Gvir, Israel Katz and Bezalel Smotrich," along with the Chief of the General Staff and senior officials of the Israel Prison Service.[23] When the Prosecutor's office moved in that direction, she announced on social media that for four years she had "urged the ICC to investigate and prosecute Israeli officials," that she "explicitly names" an Israeli official, and that the named minister could be "the first official charged with the crime of Apartheid."[24]

**Albanese pursued Americans.** Executive Order 14203[25] responds to the concern that the ICC is being used against United States persons without this country's consent. Albanese did exactly that. Her July 2025 report to the Human Rights Council urged the ICC to investigate and prosecute "corporate executives

[21] Remarks of Francesca Albanese, "The US Will End Up in the Dock" Over Crimes in Gaza, UN Expert Tells Mehdi, Zeteo (Mar. 30, 2024), https://www.youtube.com/watch?v=ifSvNHA1c4s.
[22] Torture and Genocide: Rep. of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967, U.N. Doc. A/HRC/61/71 (Mar. 23, 2026), https://www.ohchr.org/sites/default/files/documents/hrbodies/hrcouncil/sessions-regular/session61/advance-version/a-hrc-61-71-aev.pdf.
[23] *Id.* ¶ 91.
[24] @FranceskAlbs (May 18, 2026), https://x.com/FranceskAlbs/status/2056416535179034899
[25] Exec. Order No. 14203, Imposing Sanctions on the International Criminal Court, 90 Fed. Reg. 9369 (Feb. 6, 2025).

and/or corporate entities," and named dozens of companies, among them Google, Amazon, and Microsoft.[26] She told the public that the "intermingling" of United States and Israeli conduct carried "criminal implications" for the ICC to pursue.[27] The Secretary of State designated her for precisely this conduct: directing the machinery of a foreign tribunal at Americans for the act of doing business.[28]

**The Prosecution relied on the rapporteurs' submission directly, and on Albanese's own report through others.** The Prosecution's consolidated response to the observations of interveners cited the submission of United Nations rapporteurs, with Albanese among the signatories, at five separate points.[29] Its response to Israel's challenge to the Court's jurisdiction cited her "Anatomy of a Genocide" report.[30] Other participants specifically relied on her report, as well. Professor William Schabas relied on it in urging that genocide and apartheid charges be added.[31] A submission filed on behalf of alleged victims invoked the same report in urging that the charges be expanded to include genocide, and the legal representative of another group of alleged victims cited it to argue that the

---

[26]Rep. of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967, U.N. Doc. A/HRC/59/23, ¶ 96 (July 2, 2025).
[27]@FranceskAlbs (Aug. 7, 2024) https://x.com/FranceskAlbs/status/1821313905341428090
[28]Press Statement, Marco Rubio, Sec'y of State, Sanctioning Lawfare that Targets U.S. and Israeli Persons (July 9, 2025). JA57-60
[29]Prosecution's Consolidated Response, *supra* note 3, ¶¶ 66-67, 70, 73, 80 & nn.148, 156, 168, 176, 196.
[30]Prosecution's Observations to "Israel's Challenge to the Jurisdiction of the Court Pursuant to Article 19(2) of the Rome Statute," Situation in the State of Palestine, ICC-01/18-448, ¶ 99 & n.226 (June 27, 2025) (citing U.N. Doc. A/HRC/55/73).
[31]Amicus Curiae Observations of Prof. William A. Schabas Pursuant to Rule 103, Situation in the State of Palestine, alICC-01/18-257, ¶ 27 (July 30, 2024) (citing U.N. Doc. A/HRC/55/73).

"reasonable grounds to believe" standard was satisfied.[32] The Prosecution answered those submissions in turn.[33]

The district court answered all of this with one move. It is "undisputed," the court wrote, that Albanese's recommendations "have no binding effect on the ICC's actions," so they are "nothing more than her opinion." The premise is true, but the conclusion does not follow from it.

The ICC and the United Nations have a codified relationship that includes "close" or "maximum" cooperation, the "exchange of information," and encourages the entities "to combine their efforts."[34] The broad ICC-UN deal, which impacts UN "offices" such as the Office of the UN High Commissioner for Human Rights and Special Procedures such as Albanese, extends this embrace to the prosecutorial function itself and the latter's "duties and powers with respect to investigation."[35]

Moreover, our own law is built on non-binding recommendations that no one calls mere opinion. A magistrate judge's report and recommendation does not bind the district court; it is participation in the case, governed by statute. 28 U.S.C.

---

[32]Submission on Behalf of Gaza Victims in the Proceedings Related to the Situation in the State of Palestine, ICC-01/18-335, ¶ 28 & n.52 (Aug. 12, 2024) (citing U.N. Doc. A/HRC/55/73); Victims' Resubmitted Observations on the Proceedings Pursuant to Articles 19(3) and 68(3), Situation in the State of Palestine, ICC-01/18-337, ¶ 13 & n.38 (Aug. 11, 2024) (citing U.N. Doc. A/HRC/55/73).

[33]Prosecution's Consolidated Response, *supra* note 3, ¶¶ 11, 37, 38, 43, 70, 80 & nn.21-22, 65, 68, 82, 168, 196 (victims' submissions); *Id.* ¶¶ 73, 74, 81 & nn.176, 178, 199 (Schabas).

[34] "ICC - Agreement Between the International Criminal Court and the United Nations," ICC Press Release, (Oct. 4, 2004) https://www.icc-cpi.int/news/icc-agreement-between-international-criminal-court-and-united-nations; Articles 3 and 5, The Negotiated Relationship Agreement between the International Criminal Court and the United Nations," A/58/874, annex; approved by "Cooperation between the United Nations and the International Criminal Court," General Assembly resolution A/RES/58, 318, September 13, 2004

[35] *Id.* Article 18(1)

§ 636(b)(1). A prosecutor's charging application does not bind the court that receives it. A probation officer's sentencing recommendation binds no one. Each is non-binding, and each is participation in a coercive proceeding that the law treats as participation.

The binding-versus-non-binding line proves too much in the other direction. An arrest warrant is words on a page. So is an indictment. So is the Prosecutor's own application for an arrest warrant. By the district court's logic, the prosecutor who drafts the charge is a commentator too, because the charge is "communicating a message" until a judge acts on it. No court has ever believed that. The question is whether a submission is directed into the tribunal's process or cast into the air, regardless of its binding force. Albanese directed hers into the process. Albanese fed the machine.

## II. The First Amendment Does Not Immunize Coordinated Participation in a Foreign Tribunal's Coercive Process.

Assuming *arguendo* that Albanese has the First Amendment protection the plaintiffs claim for her, the designation still stands, because the controlling distinction in this area turns on coordination, not on whether the speaker's words bind anyone. The district court invoked that distinction and then read it backward.

The distinction comes from *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), a pre-enforcement challenge to the federal material-support statute, 18 U.S.C. § 2339B, by American citizens and organizations who wished to assist

designated foreign groups. The plaintiffs there had full First Amendment rights, and they wanted to provide training and expert advice to those groups, including instruction on how to petition the United Nations for relief. *Id.* at 22. The Supreme Court held that the Government could prohibit that assistance consistent with the First Amendment. The Court drew the line that decides this case. Independent advocacy is fully protected, but "a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of," a foreign entity, and that advocacy may be barred. *Id.* at 24. The statute, the Court explained, reaches only speech "to, under the direction of, or in coordination with" the foreign group. *Id.* at 26. Teaching the group how to petition an international body for relief was "expert advice," unprotected, because it was coordinated. *Id.* at 36–37. The form was speech. The coordination made it conduct the Government could regulate.

The district court quoted *Holder* for the proposition that "independently advocating for a cause is different from providing a service." *Id.* at 24. It then assumed the only fact in dispute, that Albanese was independently advocating. It never asked whether she coordinated with the Court, because it had already decided she did "nothing more than speak." That is the error. *Holder*'s line does not resolve itself; it requires examining the relationship between the speaker and the entity. Examine the relationship here, and Part I answers the question: she filed on the

docket, she signed the letter to the Evidence Unit, she named the targets, and the Prosecution cited the rapporteurs' filing in its own briefs. Coordination is the line, and she is on the wrong side of it.

Courts applying this framework to this very tribunal have treated submissions to the ICC as services rather than protected opinion. In *Open Society Justice Initiative v. Trump*, a challenge by human-rights lawyers and academics to the 2020 executive order sanctioning ICC personnel, the court agreed with the plaintiffs, and the Government conceded, that drafting amicus briefs in support of the Office of the Prosecutor is a "bespoke" legal service within the order's reach. 510 F. Supp. 3d 198, 211–12 (S.D.N.Y. 2021). In *Rona v. Trump*, a challenge by American academics and advocates to the order at issue here, the Government conceded that the order "may prohibit the transmission of an amicus curiae brief if that brief 'was drafted at the specific request of and in coordination with'" the Prosecutor. 797 F. Supp. 3d 278, 290 (S.D.N.Y. 2025). What decides the question is coordination, not how the document is labeled. A widely circulated op-ed is informational material; a brief filed on the Chamber's docket, and documents supplied to its Prosecutor, are not.

Those courts enjoined enforcement of the orders against the plaintiffs before them, and *Rona* did so for this order. However, the circumstances in those cases are distinguishable from those presented here. *Rona* and *Smith v. Trump*, 791 F. Supp.

3d 90 (D. Me. 2025), were brought by United States citizens engaged in independent scholarship and advocacy, and each court measured the order against speech bearing no coordinated relation to the Court's process. Smith applied intermediate scrutiny and still found the order wanting, because it reached speech-based services regardless of any nexus to investigations of American or allied nationals. *Id.* at 97–99. Albanese is differently situated in every respect those decisions treated as material. She signed, while resident in Tunisia, a filing lodged in The Hague; the designation does not reach independent scholarship; and it tracks her own participation in the prosecution of Americans and an allied government. The holding those cases share, that coordinated submissions to the ICC are services, is the holding that governs here.

The informational-materials exemption does not save the plaintiffs. 50 U.S.C. § 1702(b)(3). It protects the international flow of standardized, pre-existing publications. OFAC's regulations withhold the exemption from materials "not fully created and in existence at the date of the transactions," 31 C.F.R. § 560.210(c)(2), and the courts have sustained that reading as a permissible construction of the statute. *United States v. Amirnazmi*, 645 F.3d 564, 586–87 (3d Cir. 2011) (affirming IEEPA convictions for selling custom software to Iranian entities, and distinguishing materials "widely circulated in a standardized format" from those that are "bespoke"); *United States v. Griffith*, 515 F. Supp. 3d 106, 116-117 (S.D.N.Y. 2021)

(denying a motion to dismiss and holding that whether a presentation delivered in North Korea fell within the exemption was a question for the jury). An amicus brief written for one proceeding (or "situation" in ICC terminology), and documents supplied to one prosecutor, are the opposite of a standardized publication.

None of this is novel. The Government has sanctioned communicative conduct for decades, and courts have upheld it. There is no First Amendment right to support a designated entity, even when the support takes the form of speech. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165–66 (D.C. Cir. 2003) (upholding the blocking of a charity's assets); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 31–33 (D.D.C. 2012) (rejecting a First Amendment challenge to an asset freeze); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146–50 (9th Cir. 2009) (upholding the services ban against vagueness and overbreadth challenges). The Seventh Circuit has held that coordinated expressive activity falls outside the First Amendment even when the activity consists entirely of creating and distributing words. *United States v. Osadzinski*, 97 F.4th 484 (7th Cir. 2024) (affirming a material-support conviction for writing a program that let ISIS supporters rapidly duplicate propaganda). The *Brandenburg* incitement test does not change this. *Brandenburg* governs the punishment of independent advocacy, forbidding the State to proscribe advocacy of force except where it is directed to inciting imminent lawless action and is likely to produce it. *Brandenburg v. Ohio*,

395 U.S. 444, 447 (1969). *Holder* sustained a prohibition on coordinated speech without applying any incitement standard, and reserved judgment only as to independent speech. 561 U.S. at 39. Coordination, not imminence, is the question this case presents.

Apply the substitution test the district court avoided. A foreign national assembles dossiers and files briefs in a foreign court, urging it to arrest American generals and indict American companies, and supplies that court's prosecutor the documents to do it. The United States sanctions her. No one calls that an op-ed, and no one says the First Amendment requires this country to keep its banks, its visas, and its property open to her while she does it. Change the target from American officials to the leader of a close American ally, and the analysis holds. That is this case.

### III. The Designation Tracks Albanese's Conduct, Not Her Views, and the Record Makes the Executive's Judgment a Reasonable One.

The district court's last move was to recast the designation as viewpoint discrimination. If Albanese had "instead opposed ICC action against U.S. and Israeli nationals," the court reasoned, "she would not have been designated under E.O. 14203," so the designation must punish her viewpoint. The hypothetical refutes itself. The designation criterion is engagement with the Court's coercive process against protected persons: having "directly engaged in any effort by the ICC to investigate, arrest, detain, or prosecute a protected person without consent of that

person's country of nationality." Exec. Order No. 14203, § 1(a)(ii)(A), 90 Fed. Reg. 9369 (Feb. 6, 2025). That is not a viewpoint distinction. It separates a participant from a bystander, and it turns on what a person did, not on what she thinks.

To be clear, criticism of Israel by those whom the First Amendment protects is protected speech, and a sanction aimed at opinions about the conflict would raise serious constitutional problems. But that is not this designation, and the record forecloses the suggestion that Albanese is a private commentator whose unpopular views drew the Government's notice. For years she converted a United Nations mandate into an instrument pointed at American and allied nationals. Hers is a record of filings, letters, reports, and named targets. It is the record on which the designation rests.

That is the record the district court reduced to "the thought that we hate." The First Amendment does protect the thought that we hate. *Matal v. Tam*, 582 U.S. 218, 246 (2017). It does not protect filing briefs, supplying prosecutors, and naming targets in a foreign court's campaign against Americans and an allied government, and it does not require the United States to lend material support to that campaign.

The equities are not close, and the Constitution assigns this judgment to the Executive. The conduct of foreign affairs, and the defense of the Nation against the reach of a foreign tribunal, belong to the political branches. On review, the Executive's designation needs only the support of substantial evidence, more than a

scintilla and less than a preponderance. *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 925 (D.C. Cir. 2017); *see* 5 U.S.C. § 706. The record here is a multi-year paper trail in the Court's own files.

Against that authority, exercised in response to a tribunal that has issued arrest warrants aimed at the leaders of a close ally, the plaintiffs offer injuries the Executive has already moved to limit. OFAC issued two specific licenses: one covering transactions ordinarily incident and necessary to the upkeep and sale of the family's Washington residence, and one covering transactions ordinarily incident and necessary to Albanese's role as parent and legal guardian of L.C. JA62-66. The district court thought both too narrow. Whether that assessment is right goes to the width of an accommodation the Executive volunteered, not to whether the designation inflicts harm that outweighs the Nation's interest in resisting a foreign tribunal's reach. The panel that stayed the injunction drew this line: it permitted the Government to enforce the designation while forbidding any action that violates those two licenses. It was right to do so.

The district court's portrait of Albanese as "a public intellectual and scholar" who "has written and spoken widely on controversial human rights issues" failed to alter the panel's balance of equitable considerations, and several entries from her public record show why. In November 2022 she addressed by video a conference in

Gaza organized by an affiliate of Hamas, a designated terrorist organization,[36] with its officials in attendance, and told the participants, "You have a right to resist this occupation."[37] She has stated that Israel cannot claim self-defense against Palestinians.[38] She said the October 7 massacre of more than 1,000 Jews in a matter of hours "must be put in context."[39] She accused Israel of "weaponizing" reports of the sexual violence committed that day.[40] She recast the largest single-day slaughter of Jews since the Holocaust as a response to "oppression" rather than antisemitism.[41] In July 2024 she endorsed an image likening Israel's Prime Minister to Hitler, writing that it was "precisely" what she had been thinking.[42] She told a conference hosted by Al Jazeera that "we as a humanity have a common enemy," referring to Israel and its allies and supporters.[43] The director of the United States Holocaust

---

[36]Foreign Terrorist Organizations, U.S. Dep't of State, https://www.state.gov/foreign-terrorist-organizations (designating Hamas on Oct. 8, 1997).

[37]Remarks of Francesca Albanese to a conference of the Council on International Relations, Gaza (Nov. 28, 2022), reported in UN Envoy to Hamas: You Have the Right to Fight Israel, JNS (Dec. 1, 2022), https://www.jns.org/un-envoy-to-hamas-you-have-the-right-to-fight-israel.

[38] Remarks of Francesca Albanese, "Anatomy of a Genocide: A Failure of the International System?," Zoom interview hosted by Brown University (Sept. 23, 2024) https://www.youtube.com/watch?v=ycex3kCZ_qQ&list=PLTiEffrOcz_7QeI4fY0B0ZtI4rmfdlNgr&index=3

[39] @FranceskAlbs (Oct. 7, 2023), https://twitter.com/FranceskAlbs/status/1710652725870874874.

[40] Remarks of Francesca Albanese at UN Human Rights Council Press Conference (Mar. 27, 2024), https://webtv.un.org/en/asset/k19/k199zd7ei5. See, e.g., Sexual Violence Crimes on October 7, Association of Rape Crisis Centers in Israel (ARCCI), (Feb. 2024). https://www.gov.il/BlobFolder/news/arcci-submits-first-report-to-un-21-feb-2024/en/English_Swords_of_Iron_DOCUMENTS_Sexual%20violence%20crimes%20on%20Ocober%207-Feb.%202024.pdf; Mission report: Official visit of the Office of the Special Representative to the Secretary General on Sexual Violence in Conflict to Israel and the occupied West Bank 29 January-14 February 2024 (Mar. 4, 2024) https://www.un.org/sexualviolenceinconflict/wp-content/uploads/2024/03/report/mission-report-official-visit-of-the-office-of-the-srsg-svc-to-israel-and-the-occupied-west-bank-29-january-14-february-2024/20240304-Israel-oWB-CRSV-report.pdf

[41] @FranceskAlbs (Feb. 10, 2024), https://twitter.com/FranceskAlbs/status/1756351236909965591.

[42]@FranceskAlbs (July 24, 2024), https://x.com/FranceskAlbs/status/1816234719412932965.

[43] Remarks of Francesca Albanese, "Session Three: The Palestinian Cause in a World Moving Toward Multipolarity.," Al Jazeera Forum (Feb. 7, 2026) https://www.youtube.com/watch?v=YMBxWuHdwv0&t=379s

Memorial Museum called her circulation of a caricature presenting Israel as casting a spider web that entraps the world through financial and military domination[44] "unconscionable."[45] Years earlier, in a public post, she wrote that America had been "subjugated by the Jewish lobby."[46] Addressing the BBC, she wrote that "[t]he Israeli lobby" had gotten "inside your veins and system."[47] None of this is the basis for the designation, and amicus does not offer it as one. The district court invoked the public interest while painting an incomplete portrait of Albanese. The district court did not identify the public interest in keeping the Nation's financial system open to a person with her actual record – while she works inside a foreign tribunal's campaign against Americans and an ally.

## CONCLUSION

It is not correct that Francesca Albanese did "nothing more than speak." She filed on the Pre-Trial Chamber's docket. She signed the letter that put documents into the Prosecutor's evidence unit, and the unit wrote back. She named the officials she wanted arrested, including the leaders of a close American ally, and she named the American companies she wanted charged. The Prosecution cited the rapporteurs'

---

[44] Instagram post by Francesca Albanese (Oct. 29, 2025), https://www.instagram.com/francesca.albanese.unsr.opt/p/DQYwtLcimlT/.
[45] Sara J. Bloomfield, Dir., U.S. Holocaust Mem'l Museum, quoted in UN's Albanese Posts Cartoon Echoing Age-Old Anti-Jewish Spiderweb Trope, Times of Israel (Nov. 5, 2025).
[46] Luke Tress, *UN Palestinian Rights Official's Social Media History Reveals Antisemitic Comments*, TIMES OF ISRAEL (Dec. 14, 2022), https://www.timesofisrael.com/un-palestinian-rights-officials-social-media-history-reveals-antisemitic-comments (quoting Albanese's 2014 post).
[47] *Id.*

filing in its own briefs. She worked inside the proceeding, and the filings bear her name.

The First Amendment does not turn a participant in a foreign prosecution of Americans and their allies into a pamphleteer, and it does not require the United States to keep its financial system open to her while she builds the case. The threshold rule resolves this appeal on its own. The merits confirm it. The preliminary injunction should be reversed.

Respectfully submitted,

/s/ David I. Schoen
Schoen Law Firm, LLC
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Tel. 917-941-7952
Email: Schoenlawfirm@gmail.com

*Counsel for Amicus Curiae*
*Human Rights Voices*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 5,499 words, and therefore does not exceed one-half of the 13,000 words allowed a party's principal brief by Federal Rule of Appellate Procedure 32(a)(7)(B).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ David I. Schoen

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ David I. Schoen